PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRENT MIDDLETON, in his individual
capacity and as Trustee of the National
Financial Systems Management, Inc.
Employee Stock Ownership Plan; JAMIE
SORENSON; MIKE MEDELL,

      Plaintiffs – Counter –
      Defendants - Appellees,

v.

J. HOYT STEPHENSON,

      Defendant-Counterclaimant-Third-
      Party-Plaintiff-Appellant,

and

ERIC GERDES; BAILEY N. HALL;
SCOTT MEE; NATIONAL
FINANCIAL SYSTEMS
MANAGEMENT, INC.; NATIONAL
FINANCIAL SYSTEMS
MANAGEMENT, INC. EMPLOYEE
STOCK OWNERSHIP PLAN;
DARWIN NELSON; BEN STAPLES;
THRIVE NATIONAL; THRIVE
NATIONAL CORPORATION;
THRIVE SYSTEMS; GEORGE
ULRICH,

      Third-Party-Defendants-Appellees.

No. 12-4183

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:11-CV-00313-TS)**

David K. Isom of Isom Law Firm PLLC, Salt Lake City, Utah, for Defendant-Counterclaimant-Third-Party Plaintiff-Appellant.

David L. Arrington of Durham Jones & Pinegar, Salt Lake City, Utah, and Jason M. Yancey of Helgesen, Waterfall & Jones, P.C., Clearfield, Utah (Richard M. Hymas of Durham Jones & Pinegar, Salt Lake City, Utah, with him on the brief), for Third-Party Defendants-Appellees.

Before **KELLY**, **HOLLOWAY**, and **PHILLIPS**, Circuit Judges.

**PHILLIPS**, Circuit Judge.

Brent Middleton and others—all Utah citizens—brought several federal-law claims against J. Hoyt Stephenson in the United States District Court for the District of Utah. Stephenson fought back with state-law counterclaims and a third-party complaint asserting state-law claims against multiple third-party defendants—also all Utah citizens. But the district court dismissed those counterclaims and third-party claims, concluding that it lacked diversity jurisdiction to hear them because Stephenson also was from Utah. We must decide whether the district court committed clear error in finding that Stephenson was a Utah citizen. We conclude that it did not because its finding has factual support in the record, and we lack a definite and firm conviction that the district court got it wrong. We therefore affirm the district court's judgment.

FACTS

Several years ago, J. Hoyt Stephenson incorporated National Financial Systems Management, Inc. (NFSM) in Utah. The same day, the NFSM Employee Stock Ownership Plan (Plan) came into existence. The Plan has always owned 100% of NFSM's stock. Stephenson was one of the Plan's trustees.

In June 2006, Stephenson, along with his wife and children, moved from Utah to Wyoming, and the parties don't dispute that Stephenson became a Wyoming citizen as a result. About a year later, Stephenson sold one of his companies, National Financial Systems, Inc. (NFS) to NFSM for $2.9 million. Then he sold another one, Metronomics, Inc. to NFSM for about $10.3 million.

In June 2009, Stephenson and his family went back to Utah and, as discussed below, the nub of this appeal is whether Stephenson became a Utah citizen when he did so.

Meanwhile, around the same time, things weren't going smoothly for Stephenson on the business front. According to him, NFSM failed to fulfill its payment obligations for the NFS and Metronomics sales. In fact, NFSM recognized as much, so it entered into a default agreement with Stephenson in which it transferred all of the NFS and Metronomics stock back to Stephenson. A few days later, Stephenson sold all that stock to a business associate named Bailey Hall for about $10.5 million. He also sold Hall his interest in Grand View Corporate Centre, LLC for about $1.7 million.

In March 2011, Brent Middleton (who was then the Plan's trustee) and others filed a complaint against Stephenson in the United States District Court for the District of Utah. Plaintiffs alleged that they were all Utah citizens. They also alleged that when

Stephenson sold NFS and Metronomics to NFSM, he broke the law in three respects: (1) he breached his fiduciary duties as the Plan's trustee under ERISA; (2) he engaged in prohibited transactions under ERISA; and (3) he violated the Internal Revenue Code.

Firing back, Stephenson asserted state-law counterclaims against Plaintiffs as well as state-law claims against various third-party defendants, including NFSM, the Plan, and Hall. Stephenson alleged that he was a Wyoming citizen and that all Plaintiffs and Third-Party Defendants were Utah citizens.

In response, Plaintiffs and Third-Party Defendants filed motions under Federal Rule of Civil Procedure 12(b)(1) asking the district court to dismiss Stephenson's counterclaims and third-party claims for lack of diversity jurisdiction. They argued that Stephenson became a Utah citizen for diversity-jurisdiction purposes when he and his family moved back to Utah in June 2009.

After noting that "the only potential basis for jurisdiction here is diversity," App. at 124, and after considering the evidence submitted by both sides, the district court found that Stephenson was indeed a Utah citizen for diversity-jurisdiction purposes. Based on that finding, the district court concluded that it lacked subject-matter jurisdiction over Stephenson's counterclaims and third-party claims because complete diversity didn't exist. Consequently, the district court granted the motions to dismiss and entered its final judgment a few days later. Stephenson unsuccessfully moved the district court to reconsider and then appealed.

## DISCUSSION

No one disputes that the district court lacked diversity jurisdiction over Stephenson's counterclaims and third-party claims if Stephenson was a Utah citizen when Plaintiffs filed suit against him. The district court found that Stephenson was in fact a Utah citizen at that time. The question here is whether the district court clearly erred when it made that finding. We conclude that it did not.

Congress has authorized the federal district courts to exercise jurisdiction over certain cases between citizens of different states. 28 U.S.C. § 1332(a)(1). But such diversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state— that is, there must be "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely. *See id.*; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.").

The parties agree on that much, but they disagree about who has the burden of proving Stephenson's citizenship. Here's how we think it works. Start with the rule that a party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence. *See Mid-Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir. 1940). The party invoking diversity jurisdiction might satisfy this

- 5 -

burden by leaning on a rebuttable presumption that its domicile, once established, remains the same. *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 353 (1874) ("A domicile once acquired is presumed to continue until it is shown to have been changed."); *see State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

But that presumption is a rebuttable one, and the party seeking to rebut it bears only a burden of production—not persuasion. In other words, the party seeking to rebut the presumption need only *produce* sufficient evidence suggesting that domicile has changed; the party need not *prove* it. *Dyer*, 19 F.3d at 519; *accord* 13E Charles Alan Wright et al., *Federal Practice and Procedure* § 3611, at 520 (3d ed. 2009). As a definitional matter, a party produces *sufficient evidence* when it produces "enough evidence substantiating a change [in domicile] to withstand a motion for summary judgment or judgment as a matter of law on the issue." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 288 (3d Cir. 2006). And if a party successfully rebuts the presumption, it disappears from the case, leaving us at square one: The plaintiff bears the burden of proving diversity by a preponderance of the evidence. *See id.* at 287–88 (summarizing the law in this area); Fed. R. Evid. 301 (explaining presumptions).

Contrary to Stephenson's argument, the district court correctly recited these principles. Further, we think Plaintiffs and Third-Party Defendants successfully rebutted the presumption of Stephenson's Wyoming domicile by producing sufficient evidence suggesting that he became a Utah citizen when he went back to Utah in June 2009. *See, e.g.*, App. at 84–89 (Declaration of Bailey Hall). As a result, Stephenson couldn't carry

his burden of proving diversity merely by invoking a presumption in favor of his previous Wyoming domicile.

Now, when it comes to determining a person's domicile for diversity-jurisdiction purposes, a district court should consider the totality of the circumstances. *See Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000). It's an all-things-considered approach, and any number of factors might shed light on the subject in any given case. *See, e.g.*, Wright et al., *supra*, § 3612, at 536–41 (listing "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity").

Here, the district court engaged in this multifactor analysis. What's more, the district court carefully weighed the parties' conflicting evidence relating to those factors. And only after going through that process did the district court find Stephenson to be a Utah citizen.

That's an insurmountable problem for Stephenson. Even though we review the ultimate question of whether diversity jurisdiction exists de novo, *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1105 (10th Cir. 2005), we review the district court's citizenship finding only for clear error, *Crowley*, 710 F.2d at 678 ("Although a trial court's determination of domicile may be a mixed question of fact and law, such determination on appeal should not be set aside unless clearly erroneous."). Under that

standard, we may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred. *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1263 (10th Cir. 2008).

We cannot say so much here. There is ample support in the record for the district court's finding that Stephenson was a Utah citizen when Plaintiffs sued him:

- In fall 2008, Stephenson told Hall that his wife didn't like living in Wyoming so they intended to move back to their old home in Utah after the school year.

- In June 2009, Hall met with Stephenson at Stephenson's Utah home, and all indications were that the Stephensons had moved back to Utah. For example, Stephenson's wife and children were living there, and the rooms were fully furnished.

- In July 2009, one of Stephenson's daughters told Hall that she attended junior-high-school in Utah. On another occasion, Stephenson told Hall that his children were indeed going to school in Utah.

- In 2010, Stephenson told Hall that his family regularly attended church in Utah, and that Stephenson had in fact accepted a calling from his Utah-based church.

- From July 2009 through March 2012, Stephenson ran his businesses out of an office in Utah and had several employees working for him there.

- As of March 2011, Stephenson had a membership interest in two Utah-based LLCs, each listing Stephenson's address as his Utah office.

- Stephenson had business interests in multiple fitness clubs in Utah.

- Stephenson maintained a personal bank account and banking relationships in Utah.

- Stephenson's attorney was based in Utah.

- Some of the cars Stephenson and his family members drove carried Utah license plates.

We don't mean to suggest that Stephenson had nothing on his side of the ledger. To be sure, he had evidence pointing to Wyoming as his domicile. For example, he highlighted that he owned a home and ranch near Evanston, Wyoming, that he was registered to vote and did vote in Wyoming, and that his tax returns showed a Wyoming address. Even so, the district court weighed this evidence and wasn't persuaded. And, for our part, we aren't persuaded that the district court's scales were so poorly calibrated that its finding constituted clear error.

## CONCLUSION

The district court did not clearly err in finding that Stephenson was a Utah citizen when Plaintiffs filed suit against him. Because Plaintiffs and Third-Party Defendants also were Utah citizens, the district court correctly concluded that it lacked diversity jurisdiction over Stephenson's state-law counterclaims and state-law third-party claims, and it properly dismissed those claims for lack of subject-matter jurisdiction. We affirm the district court's judgment.