**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 26, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MICHELE BLAKELY,

    Plaintiff - Appellant,

v.

CARMAX AUTO SUPERSTORES, INC.;
AMERICAN CREDIT ACCEPTANCE,
LLC,

    Defendants - Appellees.

No. 24-3034
(D.C. No. 2:23-CV-02272-TC-ADM)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Plaintiff Michele Blakely, appearing pro se, appeals from the district court's

order dismissing with prejudice her complaint against defendants CarMax

Superstores, Inc. (CarMax) and American Credit Acceptance, LLC (ACA), and

confirming an arbitration award in favor of ACA. Exercising jurisdiction pursuant to

28 U.S.C. § 1291, we affirm the judgment of the district court.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

On March 2, 2021, Ms. Blakely, who at the time resided in Kansas City, Missouri, purchased a used Jeep Cherokee from CarMax's Kansas City location in Merriam, Kansas.  As part of the transaction, Ms. Blakely entered into a retail installment contract (Contract) with CarMax.  Under the terms of the Contract, Ms. Blakely made a $2,000.00 downpayment and financed the remainder of the total price, as well other related fees, bringing the amount financed to $13,580.58.  The Contract included a 28% annual interest rate, a loan term of 72 months, and monthly payments of $395.78.

The Contract included an arbitration provision that authorized either party to compel the other to arbitrate any claims, disputes, or controversies between them.  The provision stated, in relevant part: "IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND . . . ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL."[1]  R. vol. I at 56.

As permitted under the terms of the Contract, CarMax sold, assigned, and transferred its rights to ACA.  ACA is an indirect automotive finance company that accepts assignments of installment contracts entered into by consumers such as Ms. Blakely and services those contracts.  Both CarMax and ACA informed

---

[1] The arbitration provision stated that "references to 'we,' 'us' and 'our' mean the Seller [i.e., CarMax], including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract."  R. vol. I at 56.

Ms. Blakely of the assignment and of her resulting obligation to make her monthly payments to ACA.

Ms. Blakely paid her required monthly payments under the Contract through June 2022.  She thereafter made no other payments.  ACA attempted several times to reach Ms. Blakely by mail about late and unpaid payments, but the correspondence was returned.  In phone calls with ACA, Ms. Blakely confirmed the Kansas City address listed on the retail installment contract, even though she had moved to Florida and taken the Jeep Cherokee with her, and even though the retail installment contract required her to notify ACA of any change in address.  ACA attempted to repossess the Jeep Cherokee, but was unsuccessful in doing so.

In November 2022, Ms. Blakely initiated arbitration proceedings against ACA before the American Arbitration Association (AAA) and asserted claims for fraudulent misrepresentation, usury, loan sharking, harassment, breach of confidence, defamation, civil conspiracy, intentional infliction of emotional distress, and abuse of process.  ACA filed a counterclaim against Ms. Blakely for breach of her payment obligations under the Contract.  A final arbitration hearing was held in May 2023 and the arbitrator issued a written decision within a week of the hearing.  The arbitrator found against Ms. Blakely on all of her claims, found in favor of ACA on its counterclaim, and concluded ACA was entitled to recover from Ms. Blakely the amount of $14,077.21, which included $12,501.93 in principal, $1,496.12 in interest, and $79.16 in late fees.

Just days prior to the arbitration hearing, Ms. Blakely filed a pro se complaint against CarMax and ACA in the District Court of Johnson County, Kansas. The complaint asserted a claim of fraud against CarMax, and claims against both CarMax and ACA for identity theft and violating the Kansas Consumer Protection Act and the Fair Credit Reporting Act.

ACA removed the case to federal court on the basis of both diversity and federal question jurisdiction. ACA then moved to dismiss the case, arguing that "[r]es judicata and collateral estoppel prohibit[ed]" Ms. Blakely from "relitigating claims and issues that were already decided" in the arbitration proceeding. *Id.* at 76. In connection with its motion to dismiss, ACA moved the district court to take judicial notice of Ms. Blakely's arbitration demand, her amended proof of claim to the AAA, and the award of arbitration. CarMax moved to join ACA's motion to dismiss.

Ms. Blakely, for her part, opposed ACA's motion to dismiss and moved to vacate the arbitration award on the basis of alleged misconduct on the part of the arbitrator. ACA filed a cross-motion to confirm the arbitration award.

The district court issued a memorandum and order denying Ms. Blakely's motion to vacate the arbitration award, granting ACA's cross-motion to confirm the arbitration award, granting defendants' motions to dismiss and to take judicial notice, and denying all of Ms. Blakely's other pending motions, including a motion for summary judgment. In doing so, the district court concluded there were no grounds to vacate the arbitration award and that, as a result, it was required to confirm the

4

award.  The district court also concluded that Ms. Blakely's claims were "claim and issue precluded because they arose out of the same Jeep purchase and the fundamental legal claims were resolved by the arbitrator's final determination." *Id.* at 701.

Ms. Blakely filed a timely notice of appeal following the entry of final judgment.

## II

Ms. Blakely asserts a number of challenges to the district court's decision.  For the reasons outlined below, we find no merit to any of those challenges.

## A

Ms. Blakely argues that ACA's removal of the case was improper because the district court lacked subject matter jurisdiction over the case.  We disagree.

"We review the district court's ruling on the propriety of removal de novo." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012). "When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship," the action may be removed by a defendant "to federal court provided that no [party] 'is a citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (quoting 28 U.S.C. § 1441(b)(2)) (citing 28 U.S.C. § 1441(a)).  District courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

Ms. Blakely alleged in her petition that she was entitled to damages totaling more than $75,000.[2]  Further, Ms. Blakely alleged in the petition that she was a resident of Deltona, Florida, and the district court's docket entries indicate that all correspondence and copies of pleadings were mailed to Ms. Blakely at her Florida address.[3]  As for the defendants, it is undisputed that CarMax is incorporated and has its principal place of business in Virginia and ACA is a limited liability company whose members are citizens of California, Georgia, Illinois, Missouri, North Carolina, and South Carolina.  *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) (concluding that "an LLC, as an unincorporated association, takes the citizenship of all its members"); 28 U.S.C. § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of every

---

[2] Although Ms. Blakely argues that none of her claims individually seek more than $75,000, there is no dispute that collectively they total more than $75,000.  That is all that is required under our precedent.  *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (adding damages alleged for each claim to determine if the total exceeded the jurisdictional minimum).

[3] Ms. Blakely now alleges in her opening appellate brief that she "is, in fact, domiciled . . . in Missouri."  Aplt. Br. at 14.  But that is directly contrary to the statements in her district court pleadings and, in any event, there is no evidence to support Ms. Blakely's allegation.  So to the extent Ms. Blakely disputes the district court's finding of complete diversity, we see no clear error.  *See Middleton v. Stephenson*, 749 F.3d 1197, 1201 (10th Cir. 2014) ("[W]e review the district court's citizenship finding only for clear error[.]").

To the extent she is claiming she moved to Missouri sometime after she filed her petition, that does not alter the district court's diversity jurisdiction because, generally speaking, "'all challenges to subject-matter jurisdiction premised upon diversity' must be measured 'against the state of facts that existed at the time of filing.'"  *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1009 n.8 (10th Cir. 2008) (quoting *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004)).

State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). Consequently, there was complete diversity of the parties and the requirements of § 1332(a)(1) were satisfied. We therefore conclude the action was properly removed to the district court and the district court had diversity jurisdiction over the case.[4]

B

Ms. Blakely next argues that the district court erred in allowing defendants to assert affirmative defenses in their motion to dismiss her complaint.

Generally speaking, "a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (noting that "when all relevant facts are presented, the court may properly dismiss a case before discovery . . . on the basis of an affirmative defense"). In particular, we have approved the dismissal of claims on the basis of a claim preclusion defense when the facts establishing the defense were definitively ascertainable from facts subject to judicial notice. *See Johnson v. Spencer*, 950 F.3d 680, 705, 709 (10th Cir. 2020).

---

[4] Because the district court had diversity jurisdiction, it is unnecessary for us to determine whether it also had federal question jurisdiction.

Ms. Blakely's petition made no mention of the arbitration proceedings. But when ACA filed its motion to dismiss, it also filed a motion asking the district court to take judicial notice of certain documents submitted in the arbitration proceedings, including Ms. Blakely's arbitration demand to the AAA, her amended proof of claim to the AAA, and the arbitrator's award. The district court granted in part the motion to take judicial notice when it granted the motion to dismiss and, in doing so, took into account the underlying facts regarding the arbitration proceeding. We find no error on the part of the district court in doing so. *See Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.").

C

Ms. Blakely argues that, for a number of reasons, the district court erred in enforcing the arbitration award. "We review a district court's order to vacate or enforce an arbitration award de novo." *Dish Network LLC v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018). The grounds for vacating an arbitration award are limited and do not extend to errors in the arbitrator's factual findings or interpretation of the law. *See id.* (summarizing the possible grounds for vacatur); 9 U.S.C. § 10(a) (outlining four grounds for vacatur of an arbitration award). Indeed, "the standard of review of arbitral awards is among the narrowest known to the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (internal quotation marks omitted).

8

Ms. Blakely begins by asserting "[t]here is no evidence of the arbitration award in the record." Aplt. Br. at 36. Although she concedes the district court "took judicial notice of the copy of the arbitration award," she argues that ACA "did not attempt to provide the district court with proper foundational requirements such as business record affidavit under Federal Rule[] of Evidence 901." *Id.* She also argues that the copy of the arbitration award submitted by ACA was not "self-authenticating under Rule 902" and "the attorneys" for ACA "lacked the necessary knowledge to authenticate the exhibits attached to [ACA's] motion to dismiss." *Id.* Because Ms. Blakely neither raised these arguments below in her response to ACA's motion to take judicial notice, nor argued for plain-error review, we conclude they are waived for purposes of appeal.[5] *See United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (noting "our general rule against considering issues [raised] for the first time on appeal"); *Brothers v. Johnson*, 105 F.4th 1279, 1283 (10th Cir. 2024) ("[W]e do not review an issue for plain error when it is not properly presented.").

Ms. Blakely also asserts that the district court "prejudiced [her] case by misconstruing the complaint as a petition for relief from an arbitration award." Aplt. Br. at 38. The record, however, makes clear that the district court correctly understood the nature of Ms. Blakely's complaint and the claims she asserted. R. vol. I at 696 ("In this federal action, Blakely asserts several claims under the Fair Credit Reporting Act and Kansas state law.").

---

[5] We also note that Ms. Blakely herself submitted a copy of the arbitration award to the district court as an exhibit to her motion to vacate the arbitration award.

9

Ms. Blakely argues, as she did below, that the arbitration award should be vacated because the arbitrator engaged in misconduct that was prejudicial to her. According to Ms. Blakely, she "was only allotted less than 24 hours to notify [her] witnesses of the location (zoom link) of the arbitration hearing," which resulted in her not being able to present some of her witnesses. Aplt. Br. at 40. Ms. Blakely also asserts that "the arbitrator did not postpone the hearing or issue subpoenas" to witnesses. *Id.* at 41. And she asserts the arbitrator "accepted statements of counsel and the form of the transaction over business record evidence and the substance of the transaction." *Id.*

The district court rejected these same arguments, and we find no basis for overturning its decision. As the district court noted, the arbitrator's scheduling order, which was issued nearly a month prior to the arbitration hearing, provided Ms. Blakely with the precise date and time of the arbitration hearing and thus she had adequate time to arrange for the appearance of her witnesses. The reason Ms. Blakely's witnesses did not appear was because she failed to send them the necessary information regarding the Zoom hearing. And Ms. Blakely fails to explain why she was unable to provide them the Zoom link prior to the hearing. In any event, the arbitrator delayed the hearing at one point to give Ms. Blakely's witnesses a chance to appear. Further, the arbitrator provided Ms. Blakely with an opportunity to be heard and present her evidence and arguments. This included giving opening and closing statements, presenting exhibits and witnesses, and cross-examining ACA's witnesses. In sum, there is no basis in the record to conclude the arbitrator

engaged in misconduct or that Ms. Blakely was denied a fundamentally fair arbitration hearing.

Lastly, Ms. Blakely argues that the district court lacked "jurisdiction to confirm the arbitration award, pursuant to 9 USC § 9, because the application must be made in the district court where the award was made." Aplt. Br. at 44. We reject this argument. The statute cited by Ms. Blakely applies only "[i]f the parties in their agreement have agreed that a judgment of the court *shall* be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9 (emphasis added). Here, the Contract's arbitration provision permitted, but did not require, judgment upon the arbitration award to be entered in a court. R. vol. I at 56 ("Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction."). In any event, the district court in this case had diversity jurisdiction over the parties' dispute and thus had jurisdiction to enter judgment upon the arbitration award.

D

Ms. Blakely argues that because the district court lacked subject matter jurisdiction over the case, it lacked authority to enter judgment on the arbitration award and, in turn, to conclude that Ms. Blakely's civil claims were precluded by the arbitration award. We reject this argument. As we have discussed, the district court had subject matter jurisdiction over this action and the Contract provided that any court with jurisdiction could enter a judgment upon the arbitration award. Therefore, the district court had authority to both enter judgment on the arbitration award and to determine the preclusive effect of the award.

11

E

Finally, Ms. Blakely argues she "was not afforded due process" because the district court failed to (1) hold a hearing on the defendants' motion to dismiss, (2) "notify and give [her] an opportunity to be heard in the form of summary judgment when [it] considered matters outside the pleadings," and (3) "notify [her] that it was going to take judicial notice of the matters . . . outside of the pleadings." Aplt. Br. at 49.

These arguments lack merit. The district court was not required to hold a hearing on defendants' motion to dismiss. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) (noting the decision of whether to grant "an oral hearing under Rule 12(b)(6) . . . is left to the discretion of the district judge." (citation omitted)), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 215 (2007). Nor was the district court required to convert defendants' motion to dismiss into a motion for summary judgment when it relied on adjudicative facts subject to judicial notice. *See Johnson*, 950 F.3d at 705 ("A district court . . . may take judicial notice of . . . facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment." (internal quotation marks omitted)). Lastly, Ms. Blakely cannot complain that she lacked notice the court might rely on these materials because she received a copy of, and was afforded the opportunity to respond to, ACA's written motion for judicial notice. Thus, in sum, the district court did not violate Ms. Blakely's due process rights.

12

III

The judgment of the district court is affirmed.  Ms. Blakely's motion for lack of subject matter jurisdiction is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge